Ms. Hester. May it please the court, Anne Hester representing DeAngelo Whiteside. No one disputes that DeAngelo Whiteside's 210-month career offender sentence is error. That sentence also amounts to both a due process violation and a miscarriage of justice that should be remedied on collateral review. The government's view to the contrary depends on an unsustainable stance that after court sentencing discretion under the guidelines is unlimited. The Supreme Court's decision in Peugh and this court's decision decisions in the Carter line of cases demonstrate why the government is wrong. Appellate reasonableness review significantly confines the district court sentencing discretion. Perhaps the most powerful limitation on sentencing discretion is the procedural requirement that the district court explain its reasoning and that a variance be supported by a more detailed explanation than within the guidelines sentence. Simply as a matter of circuit precedent, haven't we said that absent extraordinary circumstances, challenges to guidelines are not cognizable on collateral review? The court has said that ordinary guidelines errors are not cognizable on collateral review, but this is not an ordinary guidelines error. This is not what? An ordinary guideline error. This court has. What I'm wondering is what what legal standard do we have to separate an ordinary guideline error from an extraordinary guideline error given the calculations would have some conceivable effect upon the sentence? I mean what's the principle of limitation here? I'm not sure we can simply confine this to collateral attacks on career offender determinations. We have to have some basis in law other than our own feel about well this is significant and this for demarking. So what's what's the principle here? Well I think that the Eleventh Circuit case in Spencer and the Seventh Circuit's case in Narvaez provide some helpful guidance about why career offenders are distinct from other guidelines errors. And one reason is because career offender is required by And another reason is because as Pew explains and Spencer follows up on, career career offender usually increases a defendant's sentence significantly. In fact in Spencer the court points out statistics that usually career offender designation doubles in individuals. A follow up question to you is granted the career offender status increases the might increase the sentence significantly. But that's true of any criminal history calculation. I mean there are all kinds of federal sentencing determinations that depend upon prior convictions. And I'm not sure given the fact that they all along with base effect level of affect the guidelines range. Let's suppose somebody gets put in a criminal history four as opposed to a criminal history two. That's going to have an effect. So is that open to challenge on collateral review? I would suggest that it's not because those types of bumps are really incremental bumps and not the big difference. If you have enough of those errors it can make a big difference. But I haven't seen any I haven't seen any cases in preparing for this case where where an enhancement other than something a recidivist enhancement like career offender or ACCA significantly increases a defendant's sentence. And I would I would refer the court to the decision United States versus Maybach where pre Booker the court recognized a post conviction challenge to career offender status. I mean I think that there is precedent for distinguishing these recidivist enhancements that significantly increase a defendant's sentence from other. That decision was handed down in the era of mandatory guideline and the Seventh Circuit in its Hawkins case I think indicated that there's a world of difference between mandatory guideline provisions subject only to very limited departures and advisory guidelines decisions which are subject to variant sentencing. I mean the whole regime is guided by guidelines but it's a good bit looser in terms of allowing greater district court sentencing discretion than it was at the time of the Maybach case that you cite. I'm not suggesting that Maybach controls this situation but I am suggesting that Maybach provides the court with some guidance about how you can distinguish career offender from other types of guidelines errors. I think that the the Seventh Circuit Hawkins decision suffers from the same flaw that the government's acknowledges the limitations on sentencing discretion created by the post Booker Appellate Review for reasonableness really do make a difference and really do limit the district court's discretion but you don't dispute the fact that the district court on resentencing could impose precisely the same sentence. It says you know this is what I think this individual deserves. Actually I do dispute that your honor because of the requirement that the district court explain its sentence and in a case like this in Whiteside's case the courts discretion to the sentence below the career offender range which was 262 to 327 months first of all was limited to reasons related to the substantial assistance which is how he got below that range in the first place to 210 months but also Appellate Review for reasonableness would require the district court to explain if it were to sentence down to the proper range of 140 to 175 months the court would have to explain the reasons for doing that so the original sentencing the court doesn't have reasons for going that low and if it goes that low without explaining then this court has demonstrated its willingness to vacate for substantive unreasonableness when the reasons don't support the sentence granted but at the same time if his sentence is vacated and it's as high as 210 months. The explanation is given a great deal of deference and the district court should well say well I departed downward from the guidelines range the last time because of substantial assistance and I settled on a particular figure I could have departed much further down but there was only a 20% downward departure in the initial sentencing and it was open to the district court to depart further but apparently the district court didn't believe the defendant deserved that extensive a downward departure and this is not a situation where someone's convictions have been vacated the drug convictions are still very much on the That's true and for that reason it would be very difficult on remand for the district court to justify a sentence that is six and a half to eight and a half years longer than the correct guideline range based on the same reasons that it gave at the original sentencing. I think it would be the district court would be hard-pressed to justify a 210 month sentence for the defendant provided substantial assistance and the correct guideline begins at 140 to 175 months. Under Hicks, Whiteside has a liberty interest in being sentenced within the full scope of the district court's discretion and the combined effect of the career offender enhancement and appellate reasonableness review prevented the court from exercising its discretion to impose the much lower sentence that Whiteside should have received. Denying Whiteside relief from this deprivation of sentencing discretion based on a conjecture that he might receive the same sentence on remand violates due process under Hicks but even if Whiteside's sentence is not a due process violation it is repeatedly your honor I know the government says in its brief that we didn't but we we repeatedly raised that below both in our motion and in our response to the government's our reply to the government's response correct now the district court never ruled on that because the district courts ruling related to the appeal waiver and the timeliness issue the nature of the due process claim is under Hicks the the district court was deprived of its discretion to sentence at the appropriate guideline range it's that deprivation of sentencing discretion from the sentence or that is the due process violation how can that be limited you could just swap a due process label on everything well not if the district court's sentencing discretion was not not if the district court wasn't deprived of discretion to sentence and I think the Eighth Circuit Sun Bear decision provides an example of where that would be the case because in that case the defendant's career offender sentence was also within his non-career offender guideline range so there would not be because it had to begin with an incorrect guideline range and procedural reasonableness requiring it to state reasons for its sentence in addition to the substantive reasonableness whether the sentence fits the reasons given prevented it from sentencing at the appropriate guideline range of 140 to 175 months and yet the guidelines remain advisory and the gall decision says that under an advisory regime district courts retain discretion and that they are not permitted to correct they don't accord a presumption of correctness to it well while that's true at the same time Pew recognizes that the that the procedural measures are intended to make the guide style guidelines a lodestone of sentencing and in fact Pew cites empirical evidence demonstrating that that works because when a defense when a guideline range moves up or down offenders sentences move with it so at some point the district court it is discretion is the district court is not free to impose whatever sentence that it feels like imposing it has to impose a sentence that is supported by reasons that are based on the evidence seems to be the face of the thrust of the gall decision which was intended to weaken the grip of the guidelines on district judges to retain for them a place but to retain for them an advisory place I wonder if I could shift a little bit under our pedophile decision we look at we would look at something that was a non-constitutional error only if there was a manifest injustice and manifest injustice both in the fourth prong of Olano and elsewhere then ought to denote a judicial proceeding that was almost so riddled with error that it wasn't even worth the name now I do understand that Simmons is the relevant precedent of this court and they're going forward Simmons certainly controlled but the question here is was it a manifest injustice at sentencing for the court to impose a sentence that is was concededly correct under the law as it existed at that time now Harp has been overruled but at the time it was remaining the law a panel of this court initially affirmed the Hart regime the Supreme Court justice on that panel and since went in bank but but at the time this petitioner which was before Simmons at the time this petitioner was sentenced it was in accordance with law and one can disagree about Simmons but surely a sentence that's imposed in accordance with the law as it exists in that time on an issue that is debatable there were these convictions there they were punishable by more than one year and I'm just a little bit hard-pressed to say how that is a manifest injustice sufficient to open up collateral review what do you say about that how do we get to the manifest injustice well I think it's incorrect to say that the law Harp and Jones after Simmons we now know that Harp and Jones were incorrect all along so he never was punishable by more than a year for those prior convictions and we know that his sentence correct but we now know after Simmons that Harp and Jones were incorrect so while they were binding precedent they were incorrect binding precedent so I suggest to the court that that that is a manifest injustice to sentence someone to I wouldn't go so far to say that I would just say that in this case it's a manifest injustice where a person is sentenced to between six and eight additional years in prison based on law that we now know is incorrect I will I do have rebuttal time well I was gonna address I was planning to address the timeliness of the motion under f4 and equitable estoppel issue okay white sites motion was timely under f4 because he filed it within a year of the en banc Simmons decision and under Johnson versus United States Simmons in conjunction with its effect on white sides prior North Carolina judgments generated a new fact for purposes of f4 government has offered no compelling reason why the fact in Johnson an order vacating a predicate conviction should be treated differently from the fact here which is a judicial opinion that fundamentally alters white sides criminal history first of all contrary yes first of all contrary to the government's position white side is not suggesting a limitations period that depends on any subjective knowledge and second the government has not identified a single case rejecting application of f4 to a judicial opinion that alters a defendant's criminal history as Simmons does the cases at sites don't address that situation that's my next point contrary to the government's argument adopting white sides position doesn't render f3 meaningless any more than Johnson does is demonstrated by the lack of cases addressing f4 in similar circumstances Simmons presents an unusual if not unique situation so white sides interpretation of f4 is unlikely to apply to many if any cases other than those recognizing Simmons claims but even if white sides motion was not timely equitable tolling applies because white side has been pursuing his rights diligently and extraordinary circumstances in the form of entrenched circuit precedent stood in his way the government's argument is basically asking this court to apply a rigid per se rule that a change in the law does not justify equitable tolling but under Holland versus Florida equitable tolling principles require flexibility mechanical rules are disfavored because the statute set up a kind of sort of a distinction and a dichotomy in f3 and f4 between matters of law which fall into the channel of Supreme Court decision that the Supreme Court has ruled to be retroactive and matters of fact which if f3 is not to be rendered superfluous would be something different from a matter of law or a decisional change it seems to me that Congress has covered the decisional change in f3 and said okay when there's a change in the law or a later decision comes along this is the circumstance that we want to have the statute of limitations run from but that has to be a Supreme Court decision which the court is held to be retroactive that's the only instance in which Congress has addressed decisional change and it seemed to limit it to the Supreme Court decision. Well in Johnson versus United States the Supreme Court addressed that dichotomy and it pointed out that Congress did not necessarily consider every potential situation and it hadn't considered the situation in Johnson and I think at one point the Supreme Court just described the ADPA as kind of as a sow's ear of of drafting that it that it wasn't drafted all that well. That's correct but in this case Simmons fundamentally changes the of a felony and if a recidivist offense is a different offense than a non recidivist offense basically that converts it to a different offense so it's that situation is nothing like any of the cases that the government cites and I suggest to the court that it's more like Johnson than it is like the cases that the government cites which deal with things like jury instructions so we have a raging circuit conflict over this issue huh? Well not yet I wouldn't call it a raging circuit conflict I would say that we have a paucity of decisions addressing a situation like this one then we have the 11th Circuit on the other you can you can try to say the 7th and 8th Circuit really weren't well yes if you're talking about cognizability instead of f4 I was talking about just if the court permit me to make a point about the equitable tolling that Simmons reversal of well-established precedent created an unusual and unpredictable circumstance that calls for special treatment and I decision the Troy Powell's case really demonstrates how extraordinary these circumstances are preventing someone like Whiteside from filing earlier because under Powell if Whiteside had filed his 2255 before Simmons based on Karachuri Rizendo it would have been dismissed because Karachuri is not retroactive but if he if the court adopts the government government's position on timeliness filing after Simmons which is retroactive makes his 22 position where there's never a time when he can file his claim that will be considered on its merits thank you thank you that's right you're pleased to hear from you Amy Ray for the United States yours the district court in this case properly denied and dismissed mr. White sides section 2255 motion to vacate for three reasons the first is that mr. Whiteside waived his right to preach to even seek this relief in the district court in the district court in this case properly recognized that he had knowingly involuntarily waived his right to seek post-conviction relief the second reason is that his motion is untimely and the third reason is that his motion to vacate does not present a cognizable claim for relief under section 2255 in terms I would note that this court has not yet issued a certificate of appeal ability nor has the district court so we must first consider whether or not a certificate of appeal ability may appropriately issue in this case and in order for one deal with did we deal with the first of your questions when we denied the waiver point on the plea agreement when we deny the motion to dismiss the appeal no your honor I don't think so because our well I don't think so and now the court did not provide any reasoning in the it was just simply dismissed I would note however that the government's argument in the motion to dismiss is distinct from its argument now so in the motion to dismiss it was about an appeal right it was this appeal should be dismissed because the defendant waived his right to appeal and the defendant argued that no in the plea agreement it says he may appeal the career offender designation now the issue is did the district court properly hold that the waiver precluded him from seeking this relief in the district court so it's a little bit of a distinct right one is an appellate one is a post conviction right we did argue in that context that the post conviction right waiver precluded his appeal but it is distinct and this court could still hold and I think should hold because the plain terms of the plea agreement say I'm sorry miss right yeah is the question on the COA one of whether the district court properly or is it rather whether it's debatable whether the district court properly judge Davis you're absolutely in in terms of COA it's whether it was debatable and I was hearing judge Wilkinson's question as one going to the merits as well in terms of the but I the government would argue that either way no reasonable jurist would read this plea agreement and not conclude that this defendant had voluntarily and knowingly waived and he doesn't challenge the knowing involuntary part and and the plea agreement discusses these rights distinctly they they say it cites different provisions one is post conviction it's a different procedure different time and one is a pellet make some sort of the implication I mean when we take plea agreements you're the one that often has a drafting role in this and we hold the government to a strict standard and you shouldn't force the court to get at your position by a little bit of implication which it seemed which it seemed to me we were if you want to have a waiver should you spell it out it is spelled out judge Wilkinson it is spelled out quite clearly filled out to the extent that there's a difference that there are different paragraphs about direct appeal and collateral review but it's not do you read me the language that indicates in your view that the waiver has been any collateral challenge to the sentence has been waived he says that he waives his right to challenge his sentence or his conviction under section 2255 or similar authorities are you reading verbatim well that yeah essentially I mean it's memory but yes it's it's on page 115 of the Joint Appendix and he uses and it uses the language or similar authorities but he specifically says with the exception the two exceptions ineffective assistance to counsel and prosecutorial misconduct neither which is here he waives his right to contest his sentence under and it has in the previous paragraph referenced both post conviction rights and appellate rights and it says under section 2255 or similar authorities if the district if this court holds that he hasn't waived his right fair enough but I do note that the DOS in DOS in this court recognize that the government should get the benefit of the bargain for sure if this court determines that it's ambiguous the ambiguity has to be resolved in the defendant's favor but the government's position and and my own reading of this plea agreement is that it's not and that language is different from the post conviction which is included in plainly way turning to the next issue of whether or not the defendants pardon me the petitioners motion to vacate is timely even if this court holds that the petitioner did not knowingly involuntarily waive his right to present his relief in the district court the district court still properly dismissed his motion to vacate as untimely with respect to 2255 f4 the petitioner argues that Simmons had some effect on his North Carolina judgments absolutely not true those North Carolina judgments remain in effect and in full force the same way that they did before Simmons the only it is and that's that's exactly right your honor and so the Simmons did not it is a legal decision that may have had some legal effect that is to say that his prior convictions must be viewed in a different legal light but it had absolutely no effect on those North Carolina judgments as opposed to Johnson in Johnson the petitioners prior convictions were wholly vacated and that's the difference it was the fact of the vacating of those prior convictions that triggered f4 and Johnson this case falls within the heart of f3 to legal decision Simmons was a decision of law that changed the legal nature perhaps but not the factual nature of those prior convictions and therefore it is untimely under f4 petitioners motion to vacate and there's no decision that petitioner sites in which there is a legal decision in the nature of Simmons that has been held to trigger a fact for purposes of f4 is a is a district judges determination at sentencing as to the nature and character of a prior conviction i.e. whether it's a misdemeanor or a felony is that a determination of fact it's a determination of law as applied to the facts but it's certainly a determination of law I mean whether or not something qualifies as a felony or I mean that is what Simmons was right it looked at the term punishable by more than one year in prison and held that that term that language had to be narrowed based you know as opposed to the decisions in Harp and Jones that this court was interpreting that language as a matter of law I'm moving past Simmons and I'm a district judge sitting there at sentencing and the government wants an enhanced sentence isn't it the government's burden to prove as a matter of fact that the defendant over here has a qualifying conviction yes and you prove that matter of fact through a certified record and so on but isn't it a matter of fact at the time of the sentence I yes it's a matter of fact in terms of the government must prove that the defendant has in fact been convicted of a of a prior conviction absolutely however whether or not something is qualifying is a question of law and Simmons in Simmons had the effect of changing whether or not prior convictions qualified as felonies and and that is a decision of law and not one of fact so the government's position and and and and we believe it's a strong and correct position in this case is that Simmons decision is falls right in with 2255 f3 and if this court were to hold out otherwise it would undermine if not completely render redundant 25 555 f3 turning to petitioners argument that he is entitled to equitable tolling the government's position is not that is absolutely impossible or inconceivable that a decision of law could be a reason to trigger equitable tolling the it's not appropriate for this defendant because so many in part because there was no extraordinary circumstance that stopped Mr. Whiteside from making the argument that many other defendants had made before this court's decision in Simmons this that is to say the en banc court decision Simmons the en banc decision Simmons was presaged by a number of other decisions and along the way I can tell you as someone who litigated these cases in the district court on a post-conviction matters that we were we were seeing these arguments made regularly so Mr. Whiteside could have made the same argument that Jason Simmons made that Troy Powell made in that many other defendants made a government submission is that after heart every lawyer appealing sentence to this court after heart notwithstanding the heart precedent should have included in the brief should have made it the district court and should have included in the brief to this court an objection to heart asking this court to overrule heart your answer I don't want to say that because that's how else how else that's a way to interpret the argument that everybody should have challenged heart and there's no excuse for not challenging a wrongly decided decision by a panel of this court with all due respect it's not a question of what a lawyer should should have done that's not the standard it's not an ineffective assistance of counsel question right now what the issue is is under Holland vs Florida do we told the equitable the statute of limitations because of a decision that this court rendered that followed many others it's it's a question of equitable tolling not what someone should have done but whether there was an extraordinary circumstance that prevented him from doing and the extraordinary circumstance perhaps is the ire of the judges of this court surely to be visited on a continuous string of defense lawyers from North Carolina and elsewhere saying please overrule heart I I don't think appellate panels appreciate that kind of behavior so I appreciate your argument I do and you're right to challenge equitable tolling I'm just looking for the alternative well I think the alternative I mean in this case you're not talking about challenging it from harp on but once Rodriguez came out Pruitt came out territory Rosendo came out I mean we had a string of decisions that put defendants on notice and their counsel that this was a viable issue and Jason Rodriguez so and again it's it's not really a question of whether someone should have done it it's whether under Holland vs Florida there were extraordinary circumstances that prevented him from doing it and there were five Simmons I shouldn't I should surely know that I do know I believe it was five and it might have been eight to five but maybe it was seven to five in any event it's important judge Thacker didn't participate I understood and back it was a 65 but in any event whether that was a close decision or not by the time we got there many other defendants had met this bar which is to show and to prove that there were no extraordinary circumstances that prevented Mr. Whiteside from making this argument within a year of the final judgment of his conviction which was rendered only I guess his decision is his conviction became final a right before the year elapsed right before Simmons so but there was no there were no extraordinary circumstances and there's no case that petitioner can cite with a similar circumstance where there's a string of decisions other petitioners are making these arguments and Mr. Whiteside isn't so his claim is time-barred and the district court properly held it so accordingly no certificate of appeal ability should issue and there and the court shouldn't reach the merits of the question now at some point are the harm and Simmons should it be reached by this court will it be perhaps this simply isn't the case because there are procedural problems with it you've got equitable tolling even if you get through all of those knock over all that China then you have the basic question right which judge King had said precedent foreclosed correct and the question really is is this an appropriate vehicle to just mow down all these obstacles and all these different questions to get to a position that is in conflict with two other circuits yes your honor and I it's just not playing from a position of strength here I would agree with your honor and I think it's important to note that Congress set those barriers up but I don't want to fail to at least address the merits of the issue thank you your honor and so turning to to the merits first of all I would note that there is no reason why the district court in this case can't oppose a 210 month sentence on remand I would note that this petitioner has seven prior convictions for assault with a deadly weapon on a government official to drug trafficking convictions it's quite possible that the district court on remand would or could the district court have those that record before absolutely your honor it didn't be hard to do so without sort of a blatant appearance of sort of like paying each of you know the joke when I was practicing law you know you plead guilty you know you pay rent on the courtroom you know once you're sentenced mm-hmm so this rent for appealing well I winning on appeal in the Fourth Circuit you think you could just blatantly say oh I'm gonna go up to ten well absolutely because your honor the legal landscape has completely changed I mean on remand the district court looks at it and says okay your guideline range is lower now I have a new question before me I have to decide whether or not based on your criminal history and all the facts of this offense whether or not an upward variance is warranted in light turns out that he had actually saved the life of a Bureau of Prison employee last year with the district court could the district court ignore that I mean it I think all of those those questions would be before the court let me make clear just in terms of legal standard I wanted to I wanted to assert because I think it's important to assert that this sentence was lawful then and it would be lawful now and that is why it does not meet this courts requirement that it have been a person error that rendered the entire proceeding irregular that entire proceeding while a mistake may have been made was not rendered irregular or unlawful or invalid simply because a mistake of the guidelines no matter how large there are other guideline errors that caught would constitute this dramatic a change there are 16 and 12 level enhancements 16 level enhancements there are enhancements that could create the kind of disparate result that an heiress in the as the career offender does you think he'd be able to sometimes we have limited remands and sometimes we have all in the terms of the remand mm-hmm sometimes we have broad remand you suggest that this would almost necessarily because if we ever get to that point that it was even cognizable it would have to be a broad remand and the district court under you know the codes is no limitation shall be played on the information of district court and consult during sentencing and the no limit to place that limitation here to try to render a blind sentence when somebody if somebody has seven different convictions at least under 4a 1.3 any formal criminal history would probably significantly understate the record that's right your honor and that is and and the government would agree that if this case is remanded it would be remanded for for a new sentencing at de novo resentencing proceeding he would get the benefit is whether we even get to the point of holding that this is cognizable under our precedent judge King was very emphatic in saying in the Powell decision that no that's right and because they're unlike absent extraordinary circumstances and I don't think this court has ever seen such an extraordinary circumstance guideline errors are not cognizable couple of points that I want to make in response to his Hester's argument first of all with respect to may back this court in Pettiford quite plainly held and and that may back was limited to a situation first of all that was a procedural bar question not cognizability but second it was limited to a situation in which the prior convictions the defendant didn't admit them those offenses and Pettiford limited may back to that and and recognized limitation second I know that the decisions with the exception of 11 circuits decision in Spencer in which a petition for re-hearing on bond by the government remains pending the other decisions Hawkins involved advisory guidelines but Narvaez in the seventh circuit involved a career offender error when during the mandatory guideline system time when the game and the guidelines were mandatory as did Sun Bear and and this case involved an error that was admitted during the advisory guidelines when the guidelines were advisory and I think that's a critical distinction in the reasoning either way this court's precedent holds that guidelines errors are not cognizable this is not a guideline time this is not an error if I may answer your question judge Gregory I see that my time is up we have recognized the government recognizes that now in light of Simmons we understand that the crew application of the career offender enhancement to mr. Whiteside was erroneous but certainly at the time it was made everyone understood that it was a lawful sentence that's what I'm saying that's the distinction and it wasn't an error that makes it extraordinary and perhaps a manifest injustice because it was we're not talking about an error in terms of calculations and got a point wrong something that part of that is because you had at least an opportunity to correct those mistakes when the district court made those doing sentences normally error but here no error the law change and it's sort of draconian these sentences are already in my view rather draconian and across the board that's why Congress is trying to chip away at 706 750 all these things disparate treatment mm-hmm for a person to remain in jail for year prison for years longer that we now to know the law to be it's like someone convicted in certain states where marijuana was 20 years sentence and it would be came to a different out they should not make it even legal so what you remain because at the time 20 years was the guidelines for that kind of rather draconian with it without a manifest injustice you know your honor at least that Congress enacted the anti-terrorism and effective death penalty act and Congress struck the balance between finality and an error free proceeding and the way that that balance has been stricken is that if the law that changes in it satisfies f3 and it is it creates a cognizable claim for relief it it simply isn't an error that is to be corrected in Congress struck that balance now this court can view the balance fair or unfair but it is the balance the Congress struck and this court's precedent has recognized that and and and for good reason because Congress made the determination that only limited claims could be connected corrected at this stage of the game guidelines errors don't fall within that no matter how significant and although I recognize that it was a court decision and at the time it wouldn't be considered an error it's not a manifest injustice where the law changes and we now understand that a defendant would not today be sentenced to the same sentence it's it's just not one that under these terms it has to be a or it has to be one where the sentence was unlawful in some way and it wasn't it wasn't then and it isn't now because the district court could impose the very same sentence on remand by definition if a district court could impose the same sentence on remand and has the discretion to do so it is not a manifest injustice under the anti-terrorism and effective death penalty act no matter how much anyone in this courtroom may wish it were so it is not so not under this court's precedent and judge King did recognize that and the government respectfully requests that this court apply that precedent as it is if the court has no further questions we have no further questions thank you your honors mr. we'd be happy to hear from you on rebuttal I'd like to begin where the government left off and relationship to manifest injustice because I think it's important here when the court is considering the finality interest to understand how easy it is for the district court to determine whether there is a Simmons error in somebody's sentencing basically the court has to look at one document which is the North Carolina judgment in order to determine whether there is this is a Simmons error or not and it is very easy to process these cases we know this because we have a hundred and twenty of them pending in the Western District and where the government agrees to relief we have been able to move through those quite quickly it's not something that requires any evidentiary hearing at all so for that reason the finality interest in these cases is diminished because it does not require a great deal of effort on the part of the district court to make a decision on post conviction about a Simmons mistake a court of appeals gauges it may or may not be how difficult it may or may not be for district court part of that may involve an evidentiary hearing but another part of it involves the sheer volume of claims that are coming through seems to me every time I turn around I'm seeing a new Simmons claim in in one form or another and a part of it is the is the volume of the claims that reach the district court and in this case they're going to be quite a few but that is about to end because it's a finite pool of people who will have these post-conviction Simmons claims because for now on they'll be caught at sentencing so this is not something that will go on over time but I think you it's not simply the Simmons interest the finality interest is in having the camel's nose in the tent and opening up guidelines provision to collateral challenges taking a question of law and calling it a fact and having guidelines calculations I mean every dramatic expansion in habeas corpus has begun with a step just like this that's part of the finality question is what do you set in motion I understand that I just believe that part of that consideration should be the type of claim that this is I would like to address the government's assertion that mr. Whiteside has seven prior assaults because while that is technically correct all seven of those are related to a single incident where he was driving a car toward police officers who were directing traffic and he was apparently under the influence of drugs or alcohol at the time and that's an ongoing theme throughout his criminal history is his alcohol and drug addiction I don't know to be perfectly honest with the court only only from the perspective that they were consolidated with one of the drug convictions that was used as a career offender enhancement this has to seem that the argument of this ray and ably argued obviously and eloquently done so but it seems like the argument is shift a little bit to not a question of whether we should do it but they're saying this court this panel doesn't have the powers to grant relief that you suggested you need to respond to that they said we don't have the power so just address that actually that's that's that's what the argument really is that we don't have the power to do so can you address that I don't understand where where that comes from to be perfectly honest that this court doesn't have the power to grant relief I'm not sure if she said that in the context of the whole context was that citing to Powell and you heard judge King's opinion and Powell and somehow that someone closed us COA questions those type things that's well hurdle you need to at least address if it is a hurdle first of all with respect to the Certificate of Appeal ability this court does need to issue a Certificate of Appeal ability this issue actually came up in the Miller case where the government acknowledged that the reasons for the significant Certificate of Ability are not jurisdictional it only takes one judge to do that right and all we have to make is a debatable showing of constitutional error and we've done that all right and other issues can come along for the ride after that once you have a constitutional error so the other thing to consider is that the Certificate of Appeal ability requirement is an attempt by Congress to understand that gateway what about the foreclosure argument and be three and four that's nothing in that it prohibits it prohibits miss race it it prohibits what you're asking with the f3 and again I'd point out to the court that the government it says that but there's no precedent saying that a situation an unusual situation like this cannot what what is the language that gives the because the argument is that we cannot by the very strict of the language what is the language the language is the fact language in f4 combined with the Supreme Court's interpretation of that in Johnson where the court says that this you know basically the court said this isn't pretty Congress didn't think about this situation when it drafted these provisions that's not unusual correct but we have to find a way to figure out how to fit this different situation into this framework and we're going to do it by saying that this court determination is actually a fact and I submit to the court that this determination the Simmons determination has a similar effect to Johnson because a recidivist offense is a different offense than a non recidivist offense I mean basically when you're talking about the fact of a prior conviction which is what which is what the court talks about and in Johnson you're talking about a determination of what offense the defendant actually committed and the fact there was I mean the fact there was a vacature of the of the predicate conviction you mean your position that a change in the legal status of a predicate conviction is a fact almost makes any intervening it comes very close to making any intervening change in law a fact and the question I have is in F3 it seems to me that Congress did consider very concretely what how it wanted to deal with decisional changes as they impacted on the statute of limitations and it limited that in F3 the situations where the Supreme Court had rendered a particular decision after trial and direct appeal and what have you and where it had ruled it retroactive and it says only in that limited circumstance do we want to unwind the one-year statute of limitations now as Miss Ray points out it's a trade-off between what you're advocating and the value of importance of finality that this Ray is advocating and and the statute of limitations does express an interest in formality and the particular exception addresses exactly what you're talking about which is decisional changes and it says it's limited not to a circuit court decision which Simmons was it's limited to Supreme Court decisions and not just limited to Supreme Court decisions but to Supreme Court decisions that the Supreme Court itself has decided to give retroactive effectors and you know we start doing this or going the route of equitable tolling and everything we're unwinding what Congress has done the only question I have is an ultimate matter is given what your ultimate position is you've got to go through so much to get there in terms of circuit precedent in terms of F3 and F4 and timeliness in terms of the expression in the certificate of appeal ability section that constitutional claims would be the focus of a habeas attack the question I have is given the China you have to knock over is this really an appropriate vehicle to make the kind of declaration and pronouncement that you would have the court make because that's a lot of times questions are very interesting but they're not procedurally set up and the right way they don't have the right procedural glide plane and that's the problem that's one of the problems that I'm that I'm having here but it's I think a serious one I'd like to give you a chance to respond to that well there's no denying that there are hurdles that we have to overcome in order to get to the cognizability issue but as I've argued to the court I believe that we get past those hurdles and get to the cognizability issue and cognizability is relevant also to the equitable tolling issue so that's part of the analysis the court needs to consider when trying to decide whether equitable tolling excuses him from not complying with the statute of limitations if the court concludes that that is the case so well I can imagine better cases to set up the cognizability issue these other issues are important as well no your honor thank you I thought this case was exceptionally well I want to say that and thank you both and we'd like to come down and greet you and then move into our next case that okay
judges: J. Harvie Wilkinson III, Roger L. Gregory, Andre M. Davis